## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JOEY L. PECK, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 23-2474-KHV |
| | ) | |
| SCHLAGE LOCK COMPANY, LLC, | ) | |
| ALLEGION PLC, ALLEGION S&S LOCK | ) | |
| HOLDING, INC., ALLEGION US HOLDING | ) | |
| COMPANY, INC. and ALLEGION US | ) | |
| III, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On October 24, 2023, Joey Peck filed suit against Schlage Lock Company, LLC ("Schlage"), Allegion PLC ("Allegion"), Allegion S&S Lock Holding, Inc. ("Allegion S&S Lock"), Allegion US Holding Company, Inc. ("Allegion US Holding") and Allegion US Holding III, Inc. ("Allegion US Holding III") (collectively, "defendants"), alleging sex discrimination, hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). This matter comes before the Court on Defendants' Motion For Summary Judgment (Doc. #68) filed January 17, 2025. For reasons stated below, the Court overrules defendants' motion.

## Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735,

740 (10th Cir. 2007). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence. Nahno-Lopez, 625 F.3d at 1283.

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment. Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018). The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative. Liberty Lobby, 477 U.S. at 250–51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52.

## **Factual Background**

The following facts are undisputed or, where disputed, viewed in the light most favorable to plaintiff, the non-movant.

On August 12, 2002, Ingersoll Rand Company hired plaintiff, Joey Peck, who is female.

-2-

In 2014, Allegion—the parent company of Schlage—bought Ingersoll Rand.[1]  On October 2, 2020, Allegion promoted plaintiff to Director, Channel Marketing & Analysis, and plaintiff held this position until November 15, 2022.  This promotion was contingent upon plaintiff accepting Allegion's non-competition agreement, which provided that for 12 months following the end of her employment, she refrain from competing with Allegion and restrict her dealings with Allegion customers.  During plaintiff's employment, Schlage never demoted or disciplined plaintiff or gave her a negative performance review.

Schlage has a code of conduct which prohibits discrimination, harassment and retaliation, and Schlage requires its employees to attend annual training on the code of conduct.  Plaintiff attended these training seminars and had a variety of complaint procedures available to her to report code violations, including the ability to submit an anonymous complaint.  Prior to 2022, plaintiff never complained of discrimination or harassment.

In 2022, Scott McNamara, who is male, was plaintiff's manager.  Plaintiff had worked with McNamara for many years, and he had always given her positive performance reviews.  McNamara had four direct reports—three of whom were female—and he reported to Dave Perozzi.  Plaintiff had also worked with Perozzi for many years.

Beginning in 2021, plaintiff learned of a workplace dispute between two female employees.  One of the female employees was plaintiff's subordinate and direct report and the

---

[1]    Schlage is a wholly-owned subsidiary of Allegion.  Schlage is one of the primary brands that Allegion sells to the marketplace.  Allegion and Schlage share human resources, benefits programs and payroll, and both names appear on plaintiff's paystubs.  Plaintiff utilized an @allegion.com email address.  Allegion directed plaintiff's work and the rules under which she worked, set the conditions of her employment, supervised and conducted her day-to-day activities, had the ability to discipline her, controlled her records and ultimately terminated her employment.

other was a subordinate of plaintiff's peer.  The dispute involved Schlage's service to one of its largest customers, which had short deadlines.  Though it did not directly involve plaintiff, she became involved in the dispute when her direct report came to her regarding the way the other woman was treating her, which was in violation of Allegion's values.  As the employee's supervisor, plaintiff's job was to facilitate resolution of the dispute.  In plaintiff's view, the two employees could not work together due to a multitude of issues, including the fact that the subordinate of her peer was personally attacking her subordinate.  Plaintiff did not know which of the two women was correct, and she did not know whether the dispute was based on sex, race, religion or any other protected category.  Plaintiff did believe, however, that the dispute created a hostile work environment for those involved.

In late January of 2022, plaintiff had exhausted her resources on resolving the conflict and sought support in rectifying the situation from her supervisor, McNamara.  McNamara dismissed several of plaintiff's emails seeking help, but plaintiff continued to seek support from him for nearly eight months without avail.  In or before June of 2022, plaintiff included Allison Hurley, a Human Resources Manager, in her communications regarding the dispute.  Hurley investigated and indicated that HR and the applicable managers would provide additional coaching directed toward all parties involved.

On July 13, 2022, plaintiff had a meeting with McNamara about the ongoing conflict, and McNamara described one of the subordinates as a "self-proclaimed bitch," characterized the conflict as a "molehill" and stated that the last time two female leaders could not get along, they were both "clipped," which he later clarified to mean terminated.  Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment (Doc. #73) filed February 7, 2025 at 4.  Plaintiff took McNamara's comment as a threat that if she could not resolve the conflict, he

would terminate her employment.  Plaintiff feared losing her job, lost sleep and felt that she did not have McNamara's support in her role as a leader.

On August 4, 2022, plaintiff had a follow-up discussion with McNamara about the meeting on July 13.  During their discussion, plaintiff asked McNamara about his "molehill" and "clipped" comments, and he admitted that his intent was to "nudge" plaintiff into rectifying the conflict herself.  <u>Defendants' Brief In Support Of Their Motion For Summary Judgment</u> (Doc. #69) filed January 17, 2025 at 11–12.  Plaintiff told McNamara that his comments scared and threatened her, and that his behavior was impacting her well-being.  That same day, plaintiff submitted a complaint to HR about the conflict between the subordinates.  Plaintiff's complaint did not raise any issues or concerns regarding McNamara.  Even so, following their meeting, McNamara began treating plaintiff differently by leaving her out of communications and conversations with her direct reports, becoming briefer with her in conversations and continuing to dismiss her concerns.  HR investigated plaintiff's complaint and advised her that it could not substantiate it.[2]

On September 25, 2022, plaintiff submitted a gender discrimination complaint to Allegion through its ethics helpline.  Plaintiff brought the complaint against McNamara due to his comments, confrontational communication and dismissive treatment.  Plaintiff identified numerous concerns, including but not limited to his comments on July 13, 2022, when he described one of the feuding subordinates as a "self-proclaimed bitch," characterized plaintiff's complaints as a "molehill" and stated, "that the last time two women leaders couldn't get along, they both got

---

[2]     On November 8, 2022, one of the disputing employees filed another complaint specific to harassment and bullying.  HR ultimately found that the harassment complaints were unsubstantiated but that the subordinates' behavior was unacceptable and needed to change immediately.  The conflict between the subordinates continued, however, and McNamara continued to be dismissive toward plaintiff and provided no assistance with her efforts to rectify the conflict.

clipped." <u>Plaintiff's Memorandum In Opposition</u> (Doc. #73) at 4.   Plaintiff outlined that these comments were focused against women and not all employees equally, and that McNamara's treatment had impacted her well-being.

Plaintiff informed Perozzi and the director of HR, Lynley Estes, of her complaint about McNamara.  Following plaintiff's report, McNamara continued to dismiss plaintiff and leave her out of conversations.   HR investigated plaintiff's complaint and interviewed both her and McNamara.  During the investigation, McNamara admitted that he had made the gender-based statements and that plaintiff had told him that she felt threatened by his comments.  During his interview, McNamara characterized the situation as "comical" and "all just fake drama," and reported that another male senior leader suggested that McNamara try to manage plaintiff out of the organization.  <u>Id.</u> at 24.  McNamara also characterized the situation as "irreparable" and threatened to resign from Allegion and seek employment elsewhere.  <u>Id.</u>  Defendants did not take McNamara's comments to mean that he was in fact resigning, however, and did not discipline him, lock him out of the company computer systems or terminate his employment.

On October 14, 2022, HR informed plaintiff that it could not substantiate her report against McNamara.  Plaintiff contends that HR did not properly investigate her complaints, that HR's investigation was not impartial and that HR only investigated to cover up defendants' discriminatory motives.  Plaintiff also contends that because she complained of discrimination, defendants retaliated by allowing the hostile work environment to continue and doing nothing to rectify the sex discrimination.  Following her complaint, McNamara's interactions with plaintiff became sporadic and more dismissive, and he continued to dismiss plaintiff's communications and efforts to diffuse and rectify the conflict between the subordinates.

Plaintiff expressed to HR her fear of going forward in her current relationship with

McNamara.  On October 25, 2022, plaintiff notified Perozzi that she desired to work in an organization free of harassment, retaliation and discrimination and was prepared to take legal action.  During her meeting with Perozzi, plaintiff asked whether he would consider giving her a severance agreement because she felt like they were not aligned on how to interpret values and treat people.  Plaintiff did not want to leave her employment, but she wanted "to work in an environment that reflected the company values and was free of discrimination, retaliation and harassment."  Id.  In fact, plaintiff reiterated to Estes, and Estes understood, that plaintiff was not resigning, but instead wanted to have an outside investigation of the sex discrimination while gainfully employed and doing her job.  After exhausting all internal channels for relief, plaintiff filed a charge of discrimination with the Kansas Human Rights Commission against Schlage and its representatives.  The charge only identified Schlage as plaintiff's employer.

On November 15, 2022, defendants terminated plaintiff's employment.  Though plaintiff had notified Estes that she was not resigning, defendants initiated a meeting with plaintiff and told her that they accepted her resignation, and that whether or not she accepted the severance agreement, her employment was terminated effective immediately.  Plaintiff did not accept the severance agreement, but defendants locked her out of her email and the other company systems and terminated her employment immediately.  Defendants reassigned the analytics portion of plaintiff's job duties to Jeff Ross, plaintiff's former male direct report.  Defendants claim that they replaced plaintiff with a female employee.

At the time defendants terminated her employment, plaintiff's annual compensation was $417, 804.53.  After her termination, plaintiff sought work in the areas in which she was previously employed, such as sales, marketing, e-commerce and finance.  Plaintiff dedicated full-time efforts to job searching, applied for several jobs and interviewed with at least five potential employers.

Plaintiff was restricted in her search, however, because she was under a non-competition agreement with Allegion for the 12 months following her termination. On March 13, 2023, plaintiff accepted a position at North Star Navigation as a Private Wealth Lead advisor making $140,000 per year. To accelerate her compensation, plaintiff entered into an education agreement with North Star Navigation allowing for raises as she passed tests and received designations, and plaintiff completed all the allotted education requirements more than a year earlier than projected. Plaintiff agreed to remain employed with North Star Navigation for a certain period or she would be required to repay the costs of the education programs.

On October 24, 2023, plaintiff filed suit against defendants. Complaint (Doc. #1). Plaintiff asserts claims of (1) sex discrimination and hostile work environment and (2) retaliation and hostile work environment in violation of Title VII. Pretrial Order (Doc. #70) filed January 22, 2025. On January 17, 2025, defendants filed a motion for summary judgment. Defendants' Motion For Summary Judgment (Doc. #68).

## Analysis

Plaintiff asserts two Title VII claims for sex discrimination and retaliation. Plaintiff alleges that in violation of Title VII, (1) defendants discriminated against her based on sex by subjecting her to a hostile work environment and terminating her employment; and (2) in retaliation for her complaints of sex discrimination, defendants allowed the hostile work environment to continue, failed to remedy the discrimination and terminated plaintiff's employment. Pretrial Order (Doc. #70) at 13. Defendants seek summary judgment on plaintiff's two claims, arguing that (1) because plaintiff voluntarily resigned her employment by requesting a severance agreement, defendants did not subject her to adverse employment action; (2) plaintiff cannot establish that defendants treated her differently than similarly-situated male employees; (3) even if plaintiff could establish

a prima facie case of sex discrimination, defendants had a legitimate, non-discriminatory reason
to accept her resignation, which plaintiff cannot show was pretextual; (4) because plaintiff cannot
prove that she engaged in protected activity that was causally connected to adverse employment
action, she cannot establish a prima facie case of retaliation; (5) because plaintiff ceased looking
for new employment in March of 2023, she cannot seek lost wages beyond that time; (6) plaintiff
failed to exhaust administrative remedies against the non-Schlage defendants; and (7) the non-
Schlage defendants are neither joint employers nor an integrated enterprise.

Defendants do not seek summary judgment on plaintiff's claim that they subjected her to
a hostile work environment.  Plaintiff pointed this out in her response, and defendants replied that
her complaint and amended complaint did not assert a separate count for hostile work environment.
The pretrial order, however, is the controlling document for trial.  Wilson v. Muckala, 303 F.3d
1207, 1215 (10th Cir. 2002) (inclusion of claim in pretrial order deemed to amend previous
pleadings which did not include that claim).  Here, the pretrial order clearly sets forth a hostile
work environment theory of sex discrimination, stating in plaintiff's Count I claim that "Defendant
discriminated against Plaintiff by subjecting her to a hostile work environment."  Pretrial Order
(Doc. #70) at 13.  In addition, plaintiff asserts hostile work environment as adverse employment
action for her retaliation claim, stating in Count II that "Defendant retaliated against Plaintiff
because of her opposition to unlawful sex discrimination by allowing the hostile work environment
to continue."  Id.

Defendants also replied that even if plaintiff has alleged a hostile work environment, she
cannot establish severe or pervasive harassment which altered a term or condition of her
employment.  Because defendants argue this for the first time in their reply brief, the Court
disregards the argument.  See United States v. Gurule, 461 F.3d 1238, 1248 (10th Cir. 2006) (courts

generally do not consider arguments raised for first time in reply brief).  The pretrial order could not be more clear, and by failing to timely include this issue in their original motion, defendants have forfeited their right to seek summary judgment on plaintiff's hostile work environment allegations.

## I.    Sex Discrimination

Plaintiff asserts that in violation of Title VII, defendants discriminated against her based on sex in terminating her employment.  Defendants seek summary judgment, arguing that plaintiff cannot establish a prima facie case of sex discrimination.

To establish a prima facie case of sex discrimination, plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered some harm with respect to an identifiable term or condition of employment; and (4) defendants treated her less favorably than others not in her protected class.  Muldrow v. City of St. Louis, Mo., 601 U.S. 346, 355 (2024); McNellis v. Douglas Cnty. Sch. Dist., 116 F.4th 1122, 1139 (10th Cir. 2024). Plaintiff must show that her sex is the "but for" cause of the harm.  Bostock v. Clayton Cnty., Georgia, 590 U.S. 644, 661 (2020).  After plaintiff presents a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions, and finally shifts back to plaintiff to show that the employer's articulated reasons are pretextual.  Walkingstick Dixon v. Okla. ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents, 125 F.4th 1321, 1334 (10th Cir. 2025) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

Defendants argue that plaintiff cannot prove the third or fourth elements of her prima facie case, i.e. that she suffered some harm with respect to an identifiable term or condition of employment or that defendant treated her less favorably than others not in her protected class, or

-10-

show that defendants' proffered reasons for terminating her employment were pretextual.

A.     Whether Plaintiff Can Establish Some Harm To A Term Or Condition Of
       Her Employment

In Muldrow, the Supreme Court altered the Title VII landscape by holding that when plaintiffs bring suit under Title VII's discrimination prong, they need not show that harm was "significant" or "any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." Muldrow, 601 U.S. at 355. Instead, plaintiffs need only show "some harm" or "some disadvantageous change" with respect to an identifiable term or condition of employment to establish adverse employment action. Id. at 354–55. Muldrow held that Title VII's anti-discrimination provision simply "seeks a workplace where individuals are not discriminated against" because of traits such as sex, and "thus flatly prevent[s] injury to individuals based on status, without distinguishing between significant and less significant harms." Id. at 358 (internal citations omitted). Even without Muldrow's lowered bar, termination is an adverse employment action under Title VII. Wells v. Colorado Dep't of Transp., 325 F.3d 1205, 1216 (10th Cir. 2003) ("It hardly requires stating that when an employer tells an employee that she no longer has a job, that employee's job status has been significantly and materially altered.").

Defendants argue that plaintiff did not suffer harm to a term or condition of her employment because she voluntarily resigned. Specifically, defendants assert that (1) on October 25, 2022, plaintiff scheduled a meeting with Perozzi and requested a separation agreement and (2) on November 15, 2022, Schlage offered plaintiff a severance package in exchange for her resignation, and plaintiff rejected the offer.

Plaintiff has presented evidence, however, that she notified Estes (director of HR) that she was not resigning, and Estes understood that plaintiff did not intend to resign. Nevertheless,

defendants initiated a meeting with plaintiff, offered her a severance agreement that was not open to negotiation and immediately terminated her employment even though she did not accept the severance agreement. Based on these facts, plaintiff has shown a genuine issue of material fact whether she voluntarily resigned or whether defendant terminated her employment. The Court therefore overrules defendants' motion for summary judgment on the third element of plaintiff's prima facie case.

B.    Whether Plaintiff Can Establish That Defendants Treated Her Differently

Defendants argue that plaintiff cannot show that defendants treated her differently than similarly situated male employees because Schlage replaced plaintiff with another female.

Plaintiff has presented evidence, however, that defendants treated McNamara, who is outside of plaintiff's protected class, more favorably. When HR interviewed McNamara about plaintiff's sexual discrimination complaint, he threatened to leave the company and seek employment elsewhere. Defendants did not take his comments as a resignation, terminate his employment or lock him out of the computer systems. By contrast, when plaintiff asked Perozzi (McNamara's supervisor) whether he would consider giving her a severance agreement and explicitly stated that she was not resigning, defendants initiated a meeting with her, offered her a severance agreement that was not open to negotiation and immediately terminated her employment. Plaintiff has created a genuine issue of material fact whether defendants treated her less favorably than McNamara, a similarly-situated male employee. The fact that defendants may have filled plaintiff's vacancy with a female may be relevant, but it is not dispositive. The Court overrules defendants' motion for summary judgment on the fourth element of plaintiff's prima facie case.

-12-

C.    Whether Plaintiff Can Establish Pretext

Because plaintiff has set forth a prima facie case of discrimination, the burden shifts to defendants to proffer a legitimate, non-discriminatory reason for their decision. Defendants claim that accepting an employee's resignation is a legitimate, non-discriminatory reason for an employee's departure.

Because defendants have offered a non-discriminatory reason, plaintiff must establish that the legitimate reason offered by defendants was not the true reason but rather was pretext. See Trujillo v. PacifiCorp, 524 F.3d 1149, 1154–55 (10th Cir. 2008). To defeat summary judgment, plaintiff's burden is only to demonstrate a genuine issue of material fact whether the proffered reason is unworthy of belief. Id. at 1158. Pretext can be shown by weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action such that a reasonable factfinder could rationally find them unworthy of credence and infer that the employer did not act for the asserted non-discriminatory reasons. Walkingstick Dixon, 125 F.4th at 1337.

Here, plaintiff has presented evidence that (1) less than two weeks before the termination, she confirmed with Estes, and Estes understood, that plaintiff was not resigning but rather wanted to file a complaint while remaining employed, (2) McNamara made sex-based comments, (3) defendants assigned part of plaintiff's work to a male and (4) defendants treated McNamara, a male, differently. Defendants are not entitled to summary judgment on the issue of pretext. First, their stated reason does not explain their treatment of McNamara, who put himself in a similar situation by threatening to seek employment elsewhere without clarifying that he was not resigning. Second, whether plaintiff tendered her resignation is itself disputed.

Plaintiff has shown a genuine issue of material fact whether defendants' proffered reasons

for terminating her employment were pretextual. Accordingly, the Court overrules defendants' motion for summary judgment on plaintiff's sex discrimination claim.

## II.    Retaliation

Plaintiff asserts that in violation of Title VII, defendants retaliated for her complaints of sex discrimination by allowing the hostile work environment to continue, failing to remedy the discrimination and terminating her employment. Defendants seek summary judgment on plaintiff's retaliation claim, arguing that she cannot establish a prima facie case of retaliation.

Where plaintiff seeks to establish a Title VII retaliation claim through indirect or circumstantial evidence, the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies. Pinkerton v. Colo. Dep't of Transp., 563 F.3d 1052, 1064 (10th Cir. 2009). Once plaintiff has demonstrated a prima facie case, the burden shifts to defendants to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." Meiners v. Univ. of Kan., 359 F.3d 1222, 1229 (10th Cir. 2004). If defendants articulate a legitimate reason for the action, then plaintiff must demonstrate that the asserted reasons are pretextual. Id.

To establish a prima facie case of retaliation, plaintiff must demonstrate that (1) she engaged in protected opposition to discrimination; (2) she suffered adverse employment action which would dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection exists between her protected activity and the adverse action. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); Fassbender v. Correct Care Sols., LLC, 890 F.3d 875, 890 (10th Cir. 2018).

### A.    Whether Plaintiff Can Establish That She Engaged In Protected Activity

Defendants argue that plaintiff cannot meet the first element of her retaliation claim because she did not engage in protected activity. Specifically, defendants argue that plaintiff's

two complaints were focused on ending the workplace dispute between the subordinates, which plaintiff had no reason to suspect was due to discrimination or retaliation.  Defendants also assert that the driving force behind her second complaint was to remedy the workplace dispute, and that McNamara's comments had no relation to sex.

Plaintiff's opposition to discrimination is protected activity.  Iweha v. State of Kansas, 121 F.4th 1208, 1233 (10th Cir. 2024).  Protected activity "includes either (1) participating in or initiating a Title VII proceeding or (2) opposing discrimination made unlawful by Title VII." Boese v. Fort Hays State Univ., 814 F. Supp. 2d 1138, 1146 (D. Kan. 2011), aff'd, 462 F. App'x 797 (10th Cir. 2012).  Plaintiff need not show that she reported an actual Title VII violation, as long as she can show a "reasonable good-faith belief that she was opposing discrimination." Fassbender, 890 F.3d at 890.

On September 25, 2022, because of his comments, confrontational communication and dismissive treatment, plaintiff submitted a sex discrimination complaint against McNamara to Allegion.  Plaintiff's report of sex discrimination explicitly opposes perceived discrimination and thus constitutes protected activity.  Plaintiff also engaged in protected activity when she (1) forwarded her complaint to Perozzi, (2) notified Hurley that she was seeking legal remedies because she deserved to work in an environment free of discrimination, retaliation and harassment, (3) notified Estes that she was overcome with fear and was seeking legal remedies, (4) notified Perozzi that she was seeking legal remedies and was prepared to take legal action and (5) notified Estes that she had documentation to file an outside complaint and had a right to remain employed while she did so.  Plaintiff has created a genuine issue of material fact whether she engaged in protected activity, and the Court overrules defendants' motion for summary judgment on this element.

B.    Whether Plaintiff Can Establish Adverse Employment Action

Defendants argue that because plaintiff voluntarily resigned, she cannot establish that she suffered adverse employment action.

As discussed, Muldrow altered the Title VII landscape for discrimination claims. Importantly, Muldrow distinguished adverse employment action in the context of Title VII discrimination claims and adverse employment action in the context of Title VII retaliation claims. Muldrow, 601 U.S. at 357.  Though the Supreme Court purported to lower the bar for adverse employment action in discrimination cases, it reaffirmed that in retaliation cases, plaintiff must still show that the retaliatory action caused a "significant" harm, i.e. the employer took action serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination. Id.; White, 548 U.S. at 68.

As noted previously, plaintiff has presented evidence that (1) she notified Estes that she was not resigning, (2) Estes understood that plaintiff did not intend to resign, (3) defendants initiated a meeting with plaintiff and offered her a severance agreement that was not open to negotiation and (4) immediately terminated her employment even though she did not accept the severance agreement.  Viewing the evidence in the light most favorable to plaintiff, she has shown a genuine issue of material fact whether defendants' conduct would have dissuaded a reasonable employee from making or supporting a charge of discrimination.  The Court overrules defendant's motion for summary judgment on this element of plaintiff's prima facie case.

C.    Whether Plaintiff Can Establish A Causal Connection

Defendants argue that plaintiff cannot meet the third element of her retaliation claim because she cannot show that her complaint was the but-for cause of the termination.  Defendants assert that (1) plaintiff has no evidence besides temporal proximity, and that temporal proximity

of more than one and a half months is not sufficient and (2) defendants only offered plaintiff a severance package after she raised the idea of her leaving Schlage with a severance agreement.

Plaintiff may show a causal connection by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Burrus v. United Tel. Co. of Kan., Inc., 683 F.2d 339, 343 (10th Cir. 1982). Unless close temporal proximity exists between the protected activity and the retaliatory conduct, plaintiff must offer additional evidence to establish causation. O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001). Generally, "if the adverse action occurs in a brief period up to one and a half months after the protected activity, temporal proximity alone will be sufficient to establish the requisite causal inference." Conroy v. Vilsack, 707 F.3d 1163, 1181 (10th Cir. 2013).

Here, plaintiff has presented evidence that on October 28, 2022, she last engaged in protected activity by notifying Estes that she had documentation to file an outside complaint. Less than three weeks later, on November 15, defendants terminated her employment effective immediately. This timing falls well within the spectrum of what courts have found to establish temporal proximity for purposes of causation. See id. Accordingly, on this record, defendants have not shown that as a matter of law, they are entitled to summary judgment on the issue of causation. The Court overrules defendants' motion on this element of plaintiff's prima facie case.

D.    Whether Plaintiff Can Establish Pretext

Defendants finally argue that even if plaintiff can establish a prima facie case of retaliation, she cannot prove that defendants' legitimate non-discriminatory reason for terminating her employment was pretext for unlawful discrimination. Defendants claim that they accepted plaintiff's voluntary resignation.

As noted, because defendants have offered a non-discriminatory reason, plaintiff must

establish that the legitimate reason offered by defendants was not the true reason but rather was pretext.  <u>See</u> <u>Trujillo</u>, 524 F.3d at 1154–55.  On this record, a reasonable factfinder could easily find that defendants' proffered discriminatory reasons for her termination were pretextual—Estes understood that plaintiff was not resigning, defendants did not discipline or terminate McNamara when he threatened to seek employment elsewhere and McNamara showed gender bias through his comments.

Accordingly, the Court overrules defendants' motion for summary judgment on plaintiff's retaliation claim.

## IV.    Lost Wages After March 1, 2023

Defendants ask the Court to preclude plaintiff from seeking lost wages after March of 2023. Defendants argue that plaintiff failed to mitigate her damages because she ceased looking for employment after she accepted employment as a financial planner.  Specifically, defendants argue that (1) plaintiff did not seek any alternative positions with defendants in 2022, (2) plaintiff did not know that she was eligible for rehire with defendants, (3) plaintiff admitted that she would have applied for rehire with defendants if she had known that she was eligible and (4) in March of 2023, plaintiff accepted employment as a financial advisor making $140,000 per year.

The Court may award a successful Title VII plaintiff back pay.  42 U.S.C. § 2000e–5(g)(1). Plaintiff must make a reasonable and good faith effort to mitigate her damages, but the Court will not hold her to the highest standards of diligence.  <u>Minshall v. McGraw Hill Broad. Co.</u>, 323 F.3d 1273, 1287 (10th Cir. 2003).  The employer carries the burden to establish that plaintiff did not exercise reasonable diligence.  <u>Id.</u>  The employer can meet its burden by showing "(1) that the damage suffered by plaintiff could have been avoided, <u>i.e.</u>, that there were suitable positions available which plaintiff could have discovered and for which [she] was qualified; and (2) that

plaintiff failed to use reasonable care and diligence in seeking such a position." Leidel v. Ameripride Servs., Inc., 276 F. Supp. 2d 1138, 1142 (D. Kan. 2003). If plaintiff failed to search for alternative work, refused to accept substantially equivalent employment or voluntarily quit alternative employment without good cause, defendants might demonstrate failure to mitigate. Id.

Here, the fact that plaintiff did not seek re-employment with defendants after they terminated her employment does not establish that she failed to mitigate her damages. Plaintiff has presented evidence that (1) her search for employment was initially restricted because of her one-year non-competition agreement with Allegion, (2) she diligently sought work in areas in which she was previously employed, (3) on March 13, 2023, she accepted a position with North Star Navigation as a Private Wealth Lead advisor making $140,000 and (4) at her new job, she completed additional education to accelerate her compensation. Defendants do not identify a suitable in-house position for which plaintiff was qualified or allege that they would have hired her for that position if only she had applied. Furthermore, defendants have not shown that plaintiff refused to accept substantially equivalent employment. Plaintiff has therefore established a genuine issue of material fact whether she failed to mitigate her damages.

Accordingly, the Court overrules defendants' motion for summary judgment on the affirmative defense of failure to mitigate.

## V.    Non-Employer Defendants

Defendants seek summary judgment on the issue of who employed plaintiff and ask the Court to dismiss the non-employer defendants. Specifically, defendants argue that (1) plaintiff failed to exhaust administrative remedies against non-employer defendants and (2) plaintiff admitted that Schlage is her employer. Defendants claim that Schlage is plaintiff's only employer.

The Court considers two entities joint employers if they "share or co-determine those

matters governing the essential terms and conditions of employment."  Knitter v. Corvias Mil. Living, LLC, 758 F.3d 1214, 1226 (10th Cir. 2014).  To determine control under the joint employers test, the Court considers the following factors: (1) the ability to promulgate work rules and assignments, (2) the ability to set conditions of employment including compensation, benefits and hours, (3) day-to-day supervision of employees, including employee discipline, (4) control of employee records including payroll, insurance and taxes and, most importantly, (5) the ability to terminate the employment relationship.  Id.

Here, plaintiff has presented evidence that Schlage and Allegion are joint employers because (1) Allegion directed plaintiff's work and the rules under which she worked, (2) Allegion set the conditions of plaintiff's employment, (3) Allegion supervised and conducted plaintiff's day-to-day activities and had the ability to discipline plaintiff, (4) Allegion controlled plaintiff's records such as payroll, insurance and taxes and, most importantly, (5) Allegion employees terminated plaintiff's employment.  Accordingly, the Court overrules defendants' motion for summary judgment on this issue.

**IT IS THEREFORE ORDERED** that Defendants' Motion For Summary Judgment (Doc. #68) filed January 17, 2025 is **OVERRULED.**

Dated this 17th day of April, 2025 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-20-